## APPEAL OF MESA MILLING CO.

Docket No. 1964.   Submitted July 14, 1925.   Decided October 5, 1925.

> 1. Appreciation of assets, claimed by taxpayer to represent restoration of excessive amounts written off in prior years and plant additions charged in prior years to expense, *held*, to have been properly disallowed by the Commissioner in computing invested capital, in the absence of any proof upon which proper depreciation could be determined.
> 2. Commissioner's method of applying excess-profits-tax credit in computing the additional income tax of 4 per cent imposed by the Revenue Act of 1917 approved in case of taxpayer with a fiscal year including portions of 1916 and 1917. *Appeal of F. J. Thompson, Inc.*, 1 B. T. A. 535, followed.

*Eugene D. Williams, Esq., Willis H. Brown,* and *L. Rogers, C. P. A.'s,* for the taxpayer.
*W. Frank Gibbs, Esq.,* for the Commissioner.

Before GRAUPNER, TRAMMELL, and PHILLIPS.

Taxpayer appeals from the determination of a deficiency of $5,105.65 in income and profits taxes for the fiscal years ended May 31, 1917, May 31, 1918, and the fiscal period from June 1 to December 31, 1918.

Taxpayer alleges three errors on the part of the Commissioner:

(1) In the computation of taxpayer's surplus on June 1, 1916, reducing such surplus by 10 cents. This error is admitted by the Commissioner.

(2) In reducing the book surplus of the company by the sum of $7,500, termed by the Commissioner "plant appreciation." This reduction was made by the Commissioner in each of the tax periods involved.

(3) In computing the 4 per cent income tax for 1917 upon five-twelfths of the net income for the fiscal year after applying the credit of the excess-profits tax to the whole fiscal year's income, instead of applying the excess-profits-tax credit to five-twelfths of the net income for the fiscal year.

### FINDINGS OF FACT.

The taxpayer is an Arizona corporation with its principal office at Mesa, and is engaged in the manufacture and sale of flour and other grain products. The books of the taxpayer for periods prior to June 1, 1910, are not in existence, or, if they are, can not be found. An inventory of the company as of May 31, 1910, appearing in the minute book of the corporation as a part of the minutes of an annual meeting of stockholders held June 8, 1910, contains the following:

Assets.
Mill and warehouses.
Carried on books as $35,300.
Actual value $25,000.00.

The minutes of this meeting contain the following entry:

In explanation to above report, the secretary stated that while this report showed a deficit or loss of $2,435.63, that the company's business was really on a better footing now than a year ago, that vast improvements had been made on the plant and that instead of carrying the mill and warehouses at a former book value of $35,300 the present inventory shows the same valued at a more conservative cash value of $25,000. This was decided upon by the Board of Directors after due deliberation.

On motion of S. J. Mansfeld, duly seconded by Leo Goldschmidt, all stockholders voting in favor thereof, the action of the Board of Directors in carrying all of the real estate and improvements at the valuation of $25,000 on the books of the company, was ratified.

The value of $35,300 at which the mill and warehouses were carried on the books prior to May 31, 1910, was the same value at which they had been carried prior to 1908. Between 1908 and 1910 electric power was installed and the plant wired for electricity at a cost of not less than $2,500. The mill was remodeled and several changes made in the plant to place it in better shape, at a cost of approximately $1,500. One of the warehouses was rebuilt at a cost of not less than $1,000. Between 1910 and 1914 other repairs and additions were made to the plant, the details and cost of which are not in evidence. All of these expenditures were charged to expenses and none of them capitalized on the books of the company.

At a meeting of the directors of the corporation, held January 14, 1914, the following statement, as appears from the minutes of the meeting, was made by the president:

That, whereas the new income tax law made it necessary for this corporation to take an inventory of its assets and liabilities on the 31st of December, 1913, to determine the profits or losses of this corporation for the year 1913, this has been done and the books of this company showed a net profit of $8,913.26 for the year 1913 which amount has been placed to the credit of capital account together with $7,500 which has been added to the value of the plant by. virtue of the number of improvements made therein during the past few years which had been written off as an expense, making the working capital of the corporation now $62,497.87.

The sum of $7,500, so added to the value of the plant account, is the amount disallowed by the Commissioner.

In computing the 1917 income subject to tax at the rate of 4 per cent, the Commissioner deducted the excess-profits tax computed for the first five months of 1917 from the net income for the entire fiscal year, and determined the amount subject to the 4 per cent income tax to be five-twelfths of the balance. Taxpayer claims that

amount subject to the 4 per cent tax should be determined by deducting the excess-profits tax from five-twelfths of the net income of the fiscal year.

## DECISION.

The determination of the Commissioner is approved.

## OPINION.

PHILLIPS: Taxpayer contends that the action of the taxpayer in placing $7,500 to the credit of its capital account in 1914 was justified and that such sum should be included in invested capital. As a basis for this it points out that in 1910 the plant was written down from $35,300 to $25,000, and this despite the expenditure of over $5,000 in improvements shown to have been made between 1908 and 1910, which had not been capitalized. Taxpayer's secretary and treasurer qualified as an expert on values and gave it as his opinion that the plant was worth $35,300, and not $25,000 in 1910. If we assume this to be so, we are confronted with taxpayer's records for 1911 and 1912, which show no depreciation in those years carried into the profit and loss account, nor is there any proof that any depreciation was written off from the time of acquisition of the assets to 1917. In these circumstances we can not say that any error was committed by the Commissioner in computing invested capital when he excluded the $7,500 which had been restored by taxpayer to its plant account.

In their brief, counsel for taxpayer contend that the proper depreciation to be deducted had been settled between the taxpayer and the Commissioner, but an examination of the schedules attached to the deficiency letter discloses that this applies only to the depreciation to be taken during the years involved in the tax liability, and that, in computing invested capital, the Commissioner did not change taxpayer's surplus account except to disallow the $7,500 appreciation.

Taxpayer also alleges error in the method by which the Commissioner determined the amount of income subject to the 4 per cent tax imposed by the 1917 Act. In *Appeal of F. J. Thompson, Inc.*, 1 B. T. A. 535, this question was fully considered and the conclusion reached that, in computing the 4 per cent tax imposed by the 1917 Act, the excess-profits tax was a credit to be applied against the net income for the fiscal year embraced in the return and not against the portion of the net income allocated to 1917. We have carefully reconsidered the decision in that appeal in the light of the arguments of counsel for the taxpayer. The rule laid down in the Act for the treatment of the excess-profits tax credit seems to us to be clear, and does not call upon us to interpret the congressional inten-

tion for the purpose of determining that Congress meant that the credit should be treated or tax computed otherwise than as provided in the Act.

An error of 10 cents in computing taxpayer's invested capital as of June 1, 1916, is admitted by the Commissioner. The Board is not disposed to correct a deficiency for so trifling an amount. *De minimis non curat lex.* As this will affect the amount of tax for the year ended May 31, 1917, and the recomputation of such tax will in turn affect the invested capital and tax liability for the balance of the period involved, it will be necessary to recompute the deficiency.

ARUNDELL not participating.